# United States Court of Appeals for the Fifth Circuit

---

No. 23-60080

---

United States Court of Appeals
Fifth Circuit

**FILED**

May 9, 2025

Lyle W. Cayce
Clerk

Erick Jose Sandoval Argueta,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

---

Appeal from the Board of Immigration Appeals
Agency No. A060 824 234

---

Before Graves, Higginson, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

While lawfully present in the United States, Erick Jose Sandoval Argueta, a Salvadoran who was nineteen years old at the time, solicited sex over the internet from someone he thought was a thirteen-year-old girl—but in actuality was an undercover police officer. He was convicted in Texas of online solicitation of a minor, and based on that conviction, an immigration judge (IJ) ordered him removed for a "crime of child abuse," relying on this court's decision in *Adeeko v. Garland*, 3 F.4th 741 (5th Cir. 2021). The Board of Immigration Appeals (BIA) affirmed, though Sandoval Argueta thereafter sought reconsideration of that determination before the IJ.

No. 23-60080

Sandoval Argueta has filed two petitions for review in this court, challenging the BIA's removability determination and its subsequent denial of his motion to reconsider. We deny both.

**I.**

More than a decade after he was lawfully admitted to the United States as a permanent resident, Sandoval Argueta was convicted of three crimes under Texas law. In April 2021, he was convicted of property theft and the manufacture or delivery of a controlled substance. Four months later, while on probation for his two prior convictions, Sandoval Argueta was convicted of online solicitation of a minor in violation of Texas Penal Code § 33.021(c), after he solicited sex from an undercover police officer posing online as a thirteen-year-old girl. Based on his solicitation conviction, the Government charged Sandoval Argueta as removable under 8 U.S.C. § 1227(a)(2)(E)(i) for committing a "crime of child abuse." After he admitted to having been convicted of online solicitation of a minor, the IJ found Sandoval Argueta removable as charged.

Though Sandoval Argueta had already been found removable for committing a "crime of child abuse," the Government supplemented Sandoval Argueta's charging document, alleging that he was also removable because he had been convicted of (1) an aggravated felony—drug trafficking, *see id.* § 1227(a)(2)(A)(iii), (2) "violation of [a] law relating to a controlled substance," *see id.* § 1227(a)(2)(B)(i), and (3) "a crime involving moral turpitude," *see id.* § 1227(a)(2)(A)(i)(II).[1] The Government later withdrew as grounds for removal Sandoval Argueta's "crime involving moral

---

[1] The Government retains the authority to substitute and supplement charges of removability at any time. 8 C.F.R. § 1240.10(e) ("At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by DHS in writing").

2

turpitude" and his solicitation conviction, taking the "position that [the solicitation conviction] . . . [was] not going to yield a sustainable charge given that . . . there wasn't a minor involved." Thus, the Government proceeded solely based on his drug trafficking conviction. Because Sandoval Argueta admitted to that conviction, the IJ found him removable, entered a summary order finding him ineligible for cancellation of removal, and ordered Sandoval Argueta removed. *See id.* §§ 1227(a)(2)(A)(iii), (B)(i).

About a month after the IJ ordered Sandoval Argueta removed based on his drug trafficking conviction, a Texas state court vacated that conviction and ordered a new trial. Because the sole basis for his removal was the now-vacated conviction, Sandoval moved to reopen his removal proceedings, and the IJ granted that motion.

Once his removal proceedings were reopened, Sandoval Argueta filed his first of three motions to terminate. In that motion, Sandoval Argueta contended that he was no longer removable because (1) his drug trafficking conviction had been vacated and (2) the Government was bound by its concession that his solicitation conviction could not "yield a sustainable charge" since "there wasn't a minor involved." In response, the Government filed a third charging document, substituting all prior charges with the sole charge that Sandoval Argueta was removable because he had "been convicted of two or more crimes of moral turpitude not arising out of a single scheme of criminal misconduct." *See id.* § 1227(a)(2)(A)(ii).

Sandoval Argueta then filed a renewed motion to terminate, contending that neither of his remaining convictions were "crimes of moral turpitude" and maintaining that the Government was bound by its concession regarding the solicitation conviction. Three days later, the Government filed its fourth and final charging document, reasserting the

charge that Sandoval Argueta was removable based on a "crime of child abuse."[2] *Id.* § 1227(a)(2)(E)(i).

Following the Government's reassertion of a "crime of child abuse" as a ground for removal, Sandoval Argueta filed a third motion to terminate. In that motion, Sandoval Argueta contended that he was not removable for a "crime of child abuse" because no actual child was involved in his solicitation conviction. He pointed to the BIA's decision in *Matter of Jimenez-Cedillo*, 27 I&N Dec. 782, 794 (BIA 2020), in which the BIA concluded, without analysis, that a "crime of child abuse" finding requires involvement of an actual child in the underlying conviction. According to Sandoval Argueta, *Jimenez-Cedillo* should have controlled—not our later decision in *Adeeko*, in which this court held that the BIA reasonably interpreted its own definition of "crime of child abuse" to include convictions under Texas Penal Code § 33.021(c). *See Adeeko*, 3 F.4th at 748. The IJ denied Sandoval Argueta's motions to terminate and, on Sandoval Argueta's motion, transferred the case to a different venue.

In May 2022, the new IJ held a hearing, and Sandoval Argueta again pressed his argument that *Jimenez-Cedillo* should apply, rather than *Adeeko*.

---

[2] This supplemental charge was accepted by the IJ at a subsequent hearing despite the Government's previous withdrawal of that charge and concession "that [the solicitation conviction] . . . [was] not going to yield a sustainable charge given that . . . there wasn't a minor involved." So, even if the Government did not possess the unilateral power to reinstate the "crime of child abuse" charge, *see supra* note 1, the Government was expressly permitted to do so by the IJ. The Government is therefore not judicially estopped from pursuing that charge; nor are we bound by a judicial admission, as Sandoval Argueta contends. *Cf. Pool Co. v. Cooper*, 274 F.3d 173, 185 (5th Cir. 2001) ("We are entitled, but not required, to treat this concession as a binding judicial admission." (citing *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990))); *United States v. Farrar*, 876 F.3d 702, 709 (5th Cir. 2017) ("Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind." (quotation marks and citation omitted)).

No. 23-60080

The IJ rejected that argument, refusing to "go against the Fifth Circuit when there is clear case law on the subject." The IJ found that Sandoval Argueta was removable for a "crime of child abuse" and ordered him removed to El Salvador based on his solicitation conviction as well as his vacated drug trafficking conviction. The IJ further determined that both convictions were aggravated felonies, rendering Sandoval Argueta ineligible for cancellation of removal, and that Sandoval Argueta was not entitled to protection under the Convention Against Torture.

Sandoval Argueta appealed that removal order to the BIA, raising several issues, including whether: (1) the IJ erred in finding that his drug trafficking conviction had not been vacated, (2) *Jimenez-Cedillo* or *Adeeko* controlled the "crime of child abuse" issue, and (3) the Government was bound by its concession that the solicitation conviction could not support a removability finding. The BIA affirmed the IJ's conclusion that Sandoval Argueta was removable for a "crime of child abuse" under *Adeeko*. But the BIA agreed that the IJ clearly erred by finding him removable and ineligible for cancellation of removal based on his vacated drug trafficking conviction. The BIA declined to address the other issues presented by Sandoval Argueta. Instead, the BIA remanded for the IJ to clarify which charges of removability were sustained and for Sandoval Argueta to apply for relief for which he might be eligible.

On remand, the IJ again found Sandoval Argueta removable for a "crime of child abuse," denied his applications for relief from removal, and ordered him removed to El Salvador. Sandoval Argueta waived his right to appeal to the BIA. After the Government removed him to El Salvador, Sandoval Argueta moved to reconsider the IJ's ruling that he was removable for a "crime of child abuse" and the IJ's discretionary denial of cancellation of removal. In that motion, Sandoval Argueta also asserted that the IJ erroneously referenced the additional removal charge for his vacated drug

trafficking conviction. The IJ declined to reconsider its rulings because Sandoval Argueta had already been removed.

On February 23, 2023, Sandoval Argueta filed his first petition for review in this court, arguing that the BIA and the IJ erred in concluding that he was removable for a "crime of child abuse" because no actual child was involved. In that petition, Sandoval Argueta specifically urged this court to hold that the BIA erred in following *Adeeko*, rather than the BIA's guidance in *Jimenez-Cedillo*. The Government responded that our holding in *Adeeko* controls, regardless of *Jimenez-Cedillo*.

On February 27, 2023, while his first petition for review was pending here, Sandoval Argueta noticed an appeal to the BIA from the IJ's denial of his motion to reconsider. In that BIA appeal, Sandoval Argueta maintained that the IJ erred by denying his motion to reconsider solely because he had already been removed to El Salvador. The BIA agreed with him on that point. But recognizing that Sandoval Argueta's motion to reconsider challenged the BIA's prior finding that he was removable for a "crime of child abuse," the BIA held that his motion to reconsider was procedurally improper because he failed to file such a motion before the BIA within 30 days of the BIA's finding him removable on that ground. *See* 8 C.F.R. § 1003.2(b)(2). The BIA remanded for the IJ to consider the remainder of Sandoval Argueta's motion.

Sandoval Argueta then filed a second motion to reconsider—this time with the BIA—belatedly challenging the BIA's determination that he was removable for a "crime of child abuse." In that motion, Sandoval Argueta contended that due to equitable tolling the BIA should not apply the time bar. And he again pressed that the BIA erred by finding him removable for a "crime of child abuse" by following *Adeeko* and ignoring *Jimenez-Cedillo*. The BIA denied the motion because it violated rules against both filing more

than one motion to reconsider contesting removability, 8 U.S.C. § 1229a(c)(6)(A), and filing a motion to reconsider a decision on a motion to reconsider, 8 C.F.R. § 1003.2(b)(2). In denying the motion on procedural grounds, the BIA did not address Sandoval Argueta's equitable tolling argument.

Sandoval Argueta then filed a second petition for review in this court, contending that the BIA erred by failing to consider his equitable tolling argument. This court consolidated Sandoval Argueta's petitions and ordered the parties to submit supplemental briefing on the second petition. After Sandoval Argueta filed his supplemental brief, the Government moved to hold proceedings in abeyance until pending agency proceedings concluded.[3] We granted that motion. In October 2024, we returned the case to the active calendar at Sandoval Argueta's request, despite the still-pending BIA proceedings. *See supra* note 3. Following briefing and oral argument, we requested supplemental letter briefs from the parties regarding (1) whether the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), relieves us of our duty to follow *Adeeko* under the rule of orderliness and (2) the best reading of "crime of child abuse" in 8 U.S.C. § 1227(a)(2)(E)(i). The petitions for review are now ripe for decision.

## II.

"We review de novo the BIA's legal conclusions, including whether a particular state conviction renders an alien removable." *Ponce v. Garland*,

---

[3] While the BIA was considering Sandoval Argueta's second motion to reconsider, the IJ issued an amended and supplemental removal order, again finding Sandoval Argueta removable for a "crime of child abuse." Sandoval Argueta noticed a separate appeal to the BIA from that amended order, which had not been resolved prior to his filing either petition for review in this court. Days before this court heard oral argument, however, the BIA resolved Sandoval Argueta's appeal, and Sandoval Argueta has represented to this court that he will not file a third petition for review.

70 F.4th 296, 299 (5th Cir. 2023) (alterations accepted) (quoting *Garcia v. Barr*, 969 F.3d 129, 132 (5th Cir. 2020)). "We do not review the IJ's decision unless it impacts the ruling of the BIA." *Id.* We have jurisdiction to consider the BIA's denial of a motion to reconsider, *Nolos v. Holder*, 611 F.3d 279, 281 (5th Cir. 2010) (per curiam), but our review is "under a highly deferential abuse-of-discretion standard," *Zhao v. Gonzalez*, 404 F.3d 295, 303 (5th Cir. 2005). We allow such a ruling to stand unless it is "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.* at 304 (citations and quotation marks omitted).

## III.

Sandoval Argueta's petitions for review challenge two actions by the BIA: its determination that Sandoval Argueta is removable for a "crime of child abuse," and the denial of his second motion to reconsider that determination. As to the first, (A) we hold that the best reading of "crime of child abuse" includes Sandoval Argueta's conviction and therefore deny the petition. And as to the second, (B) we hold that the BIA did not abuse its discretion in denying Sandoval Argueta's second motion to reconsider, so we deny that petition as well.

## A.

Sandoval Argueta first contends that his conviction under Texas Penal Code § 33.021(c) does not constitute a "crime of child abuse" as that phrase is used in 8 U.S.C. § 1227(a)(2)(E)(i). Section 33.021(c) provides:

> A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual

contact, sexual intercourse, or deviate sexual intercourse with
the actor or another person.

Under § 1227(a)(2)(E)(i), "[a]ny alien who at any time after his admission is convicted of . . . a crime of child abuse . . . is deportable." Comparing the two statutes, Sandoval Argueta maintains that § 33.021(c) does not categorically fit within the meaning of "crime of child abuse" because the Texas statute permits convictions where no actual child was involved. That is, § 33.021(c) enables the State to convict an individual based on a "sting" operation in which a defendant, like Sandoval Argueta, solicits sex over the internet from an undercover police officer the defendant mistakenly *believes* is a child.[4] Because a defendant may thus be convicted under § 33.021(c) for *attempted* solicitation of a minor and § 1227(a)(2)(E)(i) does not textually subject attempt offenses to removal, Sandoval Argueta contends that the Texas statute does not categorically match § 1227(a)(2)(E)(i)'s generic use of "crime of child abuse."

That argument is at odds with *Adeeko*. There, this court held that a conviction under § 33.021(c) categorically met § 1227(a)(2)(E)(i)'s definition of "crime of child abuse." 3 F.4th at 748. But Sandoval Argueta contends that *Adeeko* does not foreclose his claim because (1) neither party in *Adeeko* argued that involvement of an actual child is an element of a "crime of child abuse," and (2) the Supreme Court's decision in *Loper Bright* constitutes an intervening change in the law that frees us from *Adeeko*'s holding, as *Adeeko* applied *Chevron* deference. The Government, on the

---

[4] "Texas courts have sustained convictions under [Texas Penal Code §] 15.031," a similar Texas statute, "where the victim was not a minor." *Villegas-Lopez v. Garland*, No. 22-60377, 2023 WL 6307746, at *3 & n.3 (5th Cir. Sept. 28, 2023) (per curiam).

No. 23-60080

other hand, maintains that *Adeeko* remains binding under this court's rule of orderliness.

We need not address precedential tension where there is none. As explained below, under the best reading of § 1227(a)(2)(E)(i), a conviction under § 33.021(c) categorically meets the definition of a "crime of child abuse," whether or not a perpetrator is convicted for soliciting sex from an actual minor. That reading is consistent with our holding in *Adeeko*, such that we may pretermit the questions whether *Adeeko* remains binding and whether *Loper Bright* is an intervening change in the law that permits this panel to revisit *Adeeko*.[5]

Considering § 1227(a)(2)(E)(i) afresh, we begin—as we always do— with the statute's text. *Munoz v. Intercontinental Terminals Co., L.L.C.*, 85 F.4th 343, 349 (5th Cir. 2023). Section 1227(a)(2)(E)(i) provides that "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." We are specifically concerned with the meaning of "crime of child abuse."

That phrase, as used in § 1227(a)(2)(E)(i), has uniformly been found ambiguous. *See Garcia*, 969 F.3d at 133 ("Every circuit court to consider this issue has found the statute silent or ambiguous on the meaning of a crime of child abuse." (citing *Florez v. Holder*, 779 F.3d 207, 211 (2d Cir. 2015); *Pierre*

---

[5] In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and held that, under the Administrative Procedure Act, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright*, 603 U.S. at 412. However, the Court also cautioned that, in overruling *Chevron*, it "d[id] not call into question prior cases that relied on the *Chevron* framework" and explained that the "holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite our change in interpretive methodology." *Id.*

10

*v. Att'y Gen.*, 879 F.3d 1241, 1249 (11th Cir. 2018); *Ibarra v. Holder*, 736 F.3d 903, 910 (10th Cir. 2013))); *see also Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 158 (3d Cir. 2018); *Diaz-Rodriguez v. Garland*, 55 F.4th 697, 724 (9th Cir. 2022) (en banc), *cert. granted, vacated, and remanded*, 144 S. Ct. 2705 (2024) (remanding for further consideration in light of *Loper Bright*).

Yet, a general consensus has also developed that the phrase has a broad meaning. The BIA itself has read "crime of child abuse" to include "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Adeeko*, 3 F.4th at 746 (quoting *Garcia*, 969 F.3d at 133). And that broad interpretation was afforded *Chevron* deference by at least six circuits. *Florez*, 779 F.3d at 211–12 (deferring to the BIA's reading of the statute as reasonable); *Mondragon-Gonzalez*, 884 F.3d at 159 (same); *Garcia*, 969 F.3d at 133–34 (same); *Diaz-Rodriguez*, 55 F.4th at 731–32 (9th Cir. 2022) (en banc) (same); *Bastias v. U.S. Att'y Gen.*, 42 F.4th 1266, 1273 (11th Cir. 2022) (same), *cert. granted, vacated, and remanded*, 144 S. Ct. 2704 (2024); *see also Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1164 (10th Cir. 2021) (deferring in part).

For good reason. As the Fourth Circuit recently explained, without invoking *Chevron* deference, the best reading of § 1227(a)(2)(E)(i) confirms the BIA's broad interpretation of "crime of child abuse." *Cruz v. Garland*, 101 F.4th 361, 365–66 (4th Cir. 2024), *cert. denied, Cruz v. Bondi*, --- S. Ct. ----, 2025 WL 1151231 (U.S. Apr. 21, 2025). The Fourth Circuit explained that because § 1227(a)(2)(E)(i) encompasses "*a crime of* domestic violence, *a crime of* stalking, or *a crime of* child abuse, child neglect, or child abandonment," the statute emphasizes three distinct categories of "crime[s]." *Id.* at 365 (emphases added). The third category is a broad one, encompassing "child abuse, child neglect, [and] child abandonment." *Id.*

11

So, as the Fourth Circuit reasoned, that category must be given a reading that sweeps those child-specific offenses within the same category of "crime" articulated by the statute. *Id.* Looking for a common denominator undergirding those three offenses, the *Cruz* court determined that each share at least the following commonality: "[T]hey create a high risk of harm to a child, either by injuring the child directly or by putting the child in a situation likely to lead to injury." *Id.* Accordingly, the Fourth Circuit concluded that there is no direct injury requirement for a particular offense to be a "crime of child abuse"; rather, the minimum requirement is that the offense "create[] a sufficiently high risk that a child will be harmed." *Id.*

Applying its reading of § 1227(a)(2)(E)(i), the Fourth Circuit held that the definition of "crime of child abuse" "logically extends to attempt offenses." *Id.* at 366. Indeed, the *Cruz* court framed the question as "whether an attempt offense requires an actor to come close enough to completing an offense to constitute a reasonable probability that he will do so." *Id.* In other words, "an attempt offense qualifies as a crime of child abuse if the underlying offense qualifies as a crime of child abuse and the relevant jurisdiction's definition of attempt requires a likelihood or reasonable probability of harm to a child." *Id.*

We agree with our sister circuit's reasoning. Sandoval Argueta does not contest that a conviction for online solicitation of a minor under § 33.021(c) falls within the definition of a "crime of child abuse." He merely contests whether *attempted* online solicitation of a minor falls within that definition—*i.e.*, whether an effort to solicit sex from a minor over the internet is a "crime of child abuse" despite a mistake of fact as to the identity of the victim. But for the reasons articulated in *Cruz*, we interpret "crime of child abuse" to include *attempted* crimes of child abuse. Thus, whether an alien solicits sex from an actual minor or undercover agent is irrelevant.

12

No. 23-60080

As we clarified in *Shroff v. Sessions*, 890 F.3d 542, 544 (5th Cir. 2018), "the relevant question for removal purposes is whether the alien acted with the intention of sexually exploiting a minor." While *Shroff* dealt with a different federal statute that expressly covered attempt crimes and that was narrower than § 33.021(c), our court's statement in that case that convictions for solicitation of a minor resulting from sting operations are properly classified as attempt crimes is equally applicable here. *See id.* at 544 & n.4; *see also Garcia*, 969 F.3d at 134 (distinguishing the statute at issue in *Shroff* and *Esquivel-Quintana v. Sessions*, 581 U.S. 385 (2017), from § 1227(a)(2)(E)(i)). Coupling *Shroff* with the Fourth Circuit's analysis in *Cruz* bolsters our conclusion that the BIA did not err by finding Sandoval Argueta removable for a "crime of child abuse."

The simple fact that an alien *believes* that his victim is younger than seventeen renders his request for sexual favors a "crime of child abuse" for removal purposes because the alien's soliciting sexual favors after forming that belief "creates a sufficiently high risk that a child will be harmed." *Cruz*, 101 F.4th at 366; *see also Shroff*, 890 F.3d at 544 n.4. In other words, when an alien forms a subjective belief that his online target is a child, and he nevertheless requests sexual favors from that online target, the alien is intentionally attempting to cause harm to a child. That is enough to meet the definition of an attempted "crime of child abuse" and therefore bring such a conviction within § 1227(a)(2)(E)(i)'s reach. For that reason, a conviction under Texas Penal Code § 33.021(c) resulting from a sting operation falls within the ambit of § 1227(a)(2)(E)(i).[6]

---

[6] Citing the Supreme Court's decision in *Esquivel-Quintana*, Sandoval Argueta also contends that the two statutes are not a categorical match because § 33.021(c)'s criminalization of solicitation of minors under the age of seventeen is broader than the federal definition of "child," which includes only those below sixteen. Thus, according to Sandoval Argueta, the Texas statute is broader than the federal one, and therefore cannot

13

No. 23-60080

Against the weight of the foregoing authority, Sandoval Argueta points to no Fifth Circuit case that espouses his preferred reading of § 1227(a)(2)(E)(i). Instead, he offers the BIA's statement in *Jimenez-Cedillo* that a "crime of child abuse" finding requires involvement of an actual child in the underlying conviction. 27 I&N Dec. at 794. But that unreasoned conclusion in *Jimenez-Cedillo* hardly entices us to break with the consensus surrounding the broad reading of § 1227(a)(2)(E)(i) adopted by the BIA—to which this court deferred in *Garcia* and *Adeeko*, to which six other circuits have deferred, and which the Fourth Circuit concluded anew is the best reading of the statute.

**B.**

After the BIA found that Sandoval Argueta was removable for a "crime of child abuse," he moved for reconsideration of that determination with the IJ—not the BIA. The IJ denied his motion, and Sandoval Argueta appealed to the BIA. The BIA affirmed, finding that Sandoval Argueta's motion was improper because it was not filed with the BIA within 30 days of the BIA's determination that Sandoval Argueta was removable.

Sandoval Argueta then filed a second motion for reconsideration of his removability for a "crime of child abuse"—this time directly with the BIA. He contended that the BIA should consider that motion under principles of equitable tolling. Declining to do so, the BIA denied his motion because it violated the number bar applicable to motions for reconsideration. *See* 8 U.S.C. § 1229a(c)(6)(A) (providing that an "alien may file one motion to reconsider a decision that the alien is removable from the United States").

———————————

be a categorical match. But that argument is foreclosed by this court's decision in *Garcia*, which recognized that *Esquivel-Quintana*'s holding was narrow, 969 F.3d at 134, and that "[f]or purposes of [the] definition [of 'crime of child abuse,'] a 'child' is anyone under the age of eighteen," *id.* at 133.

14

No. 23-60080

The BIA also based its denial on the additional ground that the motion violated the prohibition on seeking to reconsider a ruling on a motion to reconsider. 8 C.F.R. § 1003.2(b)(2) (providing that "a party may not seek reconsideration of a decision denying a previous motion to reconsider").

From that decision, Sandoval Argueta filed a second petition for review, contending that the BIA erred by not considering his arguments under principles of equitable tolling. But Sandoval Argueta fails to show that the BIA's decision to deny his motion for reconsideration was "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Zhao*, 404 F.3d at 304 (citations and quotation marks omitted). Instead, the BIA's decision seems to flow from the statutory language. Therefore, his second petition for review likewise lacks merit.

## IV.

Even assuming that *Adeeko* is no longer binding post-*Loper Bright*, Sandoval Argueta is removable for a "crime of child abuse" under the best reading of § 1227(a)(2)(E)(i). Likewise, the BIA did not abuse its discretion in denying Sandoval Argueta's motion for reconsideration as number-barred and violative of the prohibition on moving to reconsider a decision on a prior motion to reconsider.

PETITIONS DENIED.

15